IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

SECURITY ALARM FINANCING
ENTERPRISES, INC.,

    Plaintiff,

v.                                            Civil Action No. 1:12CV88
                                                          (STAMP)
BETTY PARMER and
SECURE US, INC.,

    Defendants.

**MEMORANDUM OPINION AND ORDER
DENYING DEFENDANT SECURE US, INC.'S MOTION TO DISMISS,
GRANTING DEFENDANT BETTY PARMER'S MOTION TO SET ASIDE DEFAULT,
DENYING PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT AS MOOT
AND GRANTING PLAINTIFF'S MOTION TO AMEND COMPLAINT**

I.  Procedural History

Security Alarm Financing Enterprises, Inc. ("SAFE") filed the above-styled civil action in this Court against the defendants, Secure US, Inc. ("Secure US") and Betty Parmer ("Parmer"). In its complaint, SAFE asserts a claim of successor liability as a result of the sale of Secure US, in addition to seeking a declaration that SAFE's judgment lien continues to attach to Secure US's assets, as the sale of Secure US was not commercially reasonable. Defendant Secure US then filed a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim. The plaintiff filed a response to defendant Secure US's motion to dismiss. Thereafter, the plaintiff filed a request for entry of default as to defendant Parmer, because defendant Parmer failed to

file a responsive pleading to the plaintiff's complaint. This Court then ordered that default be entered against defendant Parmer. The plaintiff then requested that this Court enter a default judgment against defendant Parmer. Thereafter, defendant Parmer filed a motion to set aside default.[1] The plaintiff then filed a motion to amend its complaint on wherein it seeks to add two additional claims and one additional party.

For the following reasons, this Court denies defendant Secure US's motion to dismiss plaintiff's complaint, grants defendant Parmer's motion to set aside default, denies as moot plaintiff's motion for default judgment, and grants plaintiff's motion to amend.

## II. Facts

This action arises out of the sale of Secure US to defendant Parmer. In 2010, a judgment was entered in favor of SAFE against Secure US in the amount of $1,132,028.42. This judgment was the result of counterclaims filed by SAFE in a separate proceeding for defamation, tortious interference, and common law unfair competition. Thereafter, SAFE registered a certified copy of the judgment with this Court. At that time, SAFE obtained a lien upon Secure US's assets after a writ of fieri facias was issued by this

---

[1] Defendant Parmer entitled this motion and referred to her request as a motion to set aside default judgment. However, as this Court had not entered default judgment against defendant Parmer at the time of this filing, this Court construes defendant Parmer's motion as a motion to set aside default.

2

Court.  SAFE then filed a motion for the sale of Secure US's customer accounts, which Secure US opposed.  The Milan Puskar Amended and Restated Revocable Trust ("the Trust"), an entity that alleged it had superior lien of Secure US's property in the amount of $4.4 million, then intervened to oppose the sale as well.  Both the Trust and Secure US opposed the sale by stating that the sale amount would not satisfy the Trust's lien.  United States Magistrate Judge James E. Seibert then found that SAFE's motion for sale should be granted and this Court agreed, overruling objections from the Trust and Secure US.

Secure US then requested that SAFE agree to postpone the sale to pursue additional settlement negotiations.  SAFE and Secure US filed a proposed agreed order continuing the sale for the purpose of engaging in settlement discussions.  This Court then issued an order continuing such sale until May 16, 2012, for the purpose of working towards a settlement.  SAFE then alleges that Secure US thereafter refused to continue settlement negotiations.  SAFE contends that on April 20, 2012, it received a notice in the mail regarding a secured party sale of Secure US's assets.  This notice stated that such sale would take place on May 5, 2012.

SAFE asserts that defendant Parmer bought the Trust's notes for $2.5 million.  SAFE further asserts that defendant Parmer is Mr. Mitch Brozik's aunt, and has no history in the security alarm business, which Secure US conducts.  Mr. Brozik was the owner of

3

Secure US until defendant Parmer eventually purchased Secure US. SAFE contends that it sent a letter objecting to the sale based on irregularities and unusual terms that would discourage buyers, which reached the attorney who would be conducting the sale. SAFE further contends that the attorney conducting the sale did not adequately respond to potential buyers, specifically a Mr. Patrick Egan.

Regarding the sale itself, SAFE asserts that numerous issues existed. Specifically, SAFE alleges that potential buyers were only allowed to walk through the office and look around, and no inspection of what was contained in the file cabinets was allowed. Further, SAFE alleges that the potential buyers were denied access to Secure US's warehouse, which contained contents that were part of the auction. SAFE also alleges that instead of defendant Parmer accepting a $3.6 million cash bid for the assets, defendant Parmer purchased the assets of the company for $4 million by issuing a credit bid.

### III. Applicable Law

A. Motion to Dismiss

Rule 12(b)(6) of the Federal Rules of Civil Procedure allows a defendant to raise the defense of "failure to state a claim upon

which relief can be granted" as a motion in response to a plaintiff's complaint before filing a responsive pleading.[2]

In assessing a motion to dismiss for failure to state a claim under Rule 12(b)(6), a court must accept the factual allegations contained in the complaint as true. Advanced Health-Care Servs., Inc. v. Radford Cmty. Hosp., 910 F.2d 139, 143 (4th Cir. 1990). Dismissal is appropriate only if "'it appears to be a certainty that the plaintiff would be entitled to no relief under any state of facts which could be proven in support of its claim.'" Id. at 143-44 (quoting Johnson v. Mueller, 415 F.2d 354, 355 (4th Cir. 1969)); see also Rogers v. Jefferson-Pilot Life Ins. Co., 883 F.2d 324, 325 (4th Cir. 1989).

A motion to dismiss for failure to state a claim under Rule 12(b)(6) should be granted only in very limited circumstances, as the pleading requirements of Federal Rule of Civil Procedure 8(a)(2) only mandate "a short and plain statement of a claim showing that the pleader is entitled to relief." Conley v. Gibson, 355 U.S. 41, 47 (1957). Still, to survive a motion to dismiss, the complaint must demonstrate the grounds to entitlement to relief

---

[2]Although defendant Secure US states that it is filing a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), it cites West Virginia case law and the West Virginia Rules of Civil Procedure when stating the law of Federal Rule of Civil Procedure 12(b)(6). Such cases and rules are not applicable to defendant Secure US's motion, and as such this Court will not apply defendant Secure US's cited case law and rules concerning Rule 12(b)(6) when making its findings.

with "more than labels and conclusions . . . factual allegations must be enough to raise a right to relief above the speculative level." Bell Atlantic v. Twombly, 550 U.S. 544, 555 (2007).

B.  Motion to Set Aside Default

Federal Rule of Civil Procedure 55(c) provides: "The court may set aside an entry of default for good cause, and it may set aside a default judgment under Rule 60(b)." Fed. R. Civ. P. 55(c). In the present case, a default judgment has not yet been entered, although the plaintiff did file a motion for default judgment. Because this Court has not granted the plaintiff's motion for default judgment, this Court must evaluate defendant Parmer's motion to set aside default under the "good cause" standard of Rule 55(c) rather than the more rigorous standard of Rule 60(b).

The United States Court of Appeals for the Fourth Circuit has held that "relief from a judgment of default should be granted where the defaulting party acts with reasonable diligence in seeking to set aside the default and tenders a meritorious defense." United States v. Morandi, 673 F.2d 725, 727 (4th Cir. 1982); see also Payne ex rel. Estate of Calzada v. Brake, 439 F.3d 198, 204-05 (4th Cir. 2006) ("When deciding whether to set aside an entry of default, a district court should consider whether the moving party has a meritorious defense, whether it acts with reasonable promptness, the personal responsibility of the defaulting party, the prejudice to the party, whether there is a

history of dilatory action, and the availability of sanctions less drastic."). "Whether a party has taken 'reasonably prompt' action . . . must be gauged in light of the facts and circumstances of each occasion and the exercise of discretion by the trial judge will not be disturbed lightly." Id. In order to establish a meritorious defense, the defaulting party need only present evidence which, if believed, would permit either the court or the jury to find for the defaulting party. Id. (citing Cent. Operating Co. v. Util. Workers of Am., 491 F.2d 245, 252 n.8 (4th Cir. 1974)).

Justice "demands that a blameless party not be disadvantaged by the errors or neglect of his attorney which cause a final, involuntary termination of proceedings." Id. at 728. Further, Rule 55(c) motions must be "liberally construed in order to provide relief from the onerous consequences of defaults and default judgments." Lolatchy v. Arthur Murray, Inc., 816 F.2d 951, 954 (4th Cir. 1987) (quoting Tolson v. Hodge, 411 F.2d 123, 130 (4th Cir. 1969)).

C. Motion to Amend Complaint

Federal Rule of Civil Procedure 15(a)(1)(A) states, in pertinent part, that "[a] party may amend its pleading once as a matter of course . . . before being served with a responsive pleading." If a party seeks to amend its pleadings in all other cases, it may only do so "with the opposing party's written consent

7

or the court's leave. The court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2).

Rule 15(a) grants the district court broad discretion concerning motions to amend pleadings, and leave should be granted absent some reason "such as undue delay, bad faith, or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment or futility of the amendment." Foman v. Davis, 371 U.S. 178, 182 (1962); see also Ward Elec. Serv. v. First Commercial Bank, 819 F.2d 496, 497 (4th Cir. 1987); Gladhill v. Gen. Motors Corp., 743 F.2d 1049, 1052 (4th Cir. 1984).

## IV. Discussion

### A. Motion to Dismiss

In its motion to dismiss, defendant Secure US argued that the plaintiff's complaint illustrated that the sale was commercially reasonable, and as such the complaint is without merit. In arguing this, defendant Secure US points to particular paragraphs, wherein it believes the plaintiff has failed to state a claim concerning whether the sale of Secure US was commercially unreasonable. It is unclear whether the defendant addresses Count II of the plaintiff's complaint dealing with successor liability. However, defendant Secure US does state that "[t]he fact that the secured party is the Aunt of the principal of [defendant Secure US's] company and is now

8

conducting a business with theses assets under a new company is of no legal significance."  ECF No. 11.

The plaintiff responds by arguing: (1) the motion must be denied because it failed to file a supporting memorandum of law; (2) the detailed factual allegations in the complaint support a finding that the secured party sale was commercially unreasonable; and (3) the motion to dismiss fails to address the majority of the factual allegations in the complaint.  This Court agrees with the plaintiff in so much as it finds that the plaintiff stated sufficient factual allegations "to raise a right to relief above the speculative level."  Twombly, 550 U.S. at 555.

1. Count I: Declaratory Judgment

In Count I, the plaintiff requests that this Court find that the sale of Secure US was not conducted in good faith or in a commercially reasonable manner and therefore defendant Parmer took Secure US subject to the plaintiff's lien.  As stated above, defendant Secure US states that the allegations alleged in the plaintiff's complaint fail to state a claim upon which relief can be granted.

Under West Virginia law, "[e]very aspect of a disposition of collateral, including the method, manner, time, place and other terms, must be commercially reasonable."  W. Va. Code § 46-9-610(b).  If the disposition is "commercially reasonable, a secured party may dispose of collateral by public or private

proceedings . . . and at any time and place and on any terms." Id. In addition, regardless of the secured party's actions, if the transferee at the secured party's disposition does not act in good faith, it "takes the collateral subject to . . . any other security interest or other lien." W. Va. Code § 46-9-617. Because defendant Parmer is both the secured party who conducted the sale and the eventual transferee of the collateral of Secure US, she must have conducted the sale in a commercially reasonable way as the secured party and acted in good faith as the transferee.

Defendant Secure US takes issue specifically with paragraph 37 and 63 of plaintiff's complaint. First, paragraph 37 of the plaintiff's complaint states in pertinent part, "Mr. Morgan did not disclose it was Brozik's aunt who had purchased the notes from the Trust and was the new secured creditor." The plaintiff argues that because the plaintiff earlier states in paragraph 33 of the plaintiff's complaint that it knew defendant Parmer purchased the notes from the Trust, "the fact that the secured party was not identified in the initial notice is of no relevance whatsoever as to whether or not the sale was commercially reasonable or not." ECF No. 11. At paragraph 63 of the plaintiff's complaint, the plaintiff states "Parmer and Secure US conducted the sale on a Saturday morning, imposed unusual and restrictive financial conditions upon a potential bidder, and refused to allow potential bidders to inspect or otherwise access the assets being sold."

Defendant Secure US argues that the sale being on a Saturday actually enhanced the commercial reasonableness of the sale, as it allowed time for travel and the bidders did not have to take time off work to attend the sale. Further, defendant Secure US argued that the requirement that the buyer pay the sale price in a full cash payment was not unreasonable, as it was intended to protect the assets from being purchased by bidders that were unable to pay the purchase price. Finally, it argues that the fact that potential bidders were not allowed to inspect or access the goods being sold at the auction did not deter bidding and was not commercially unreasonable.

The plaintiff responds by stating that the allegations in the complaint do support a finding that the secured party sale was commercially unreasonable. The plaintiff states that the self-dealing it alleges between the secured party, defendant Parmer, and Secure US makes the sale unreasonable. For this proposition, the plaintiff cites, <u>Fiber-Lite Corp. v. Molded Acoustical Products of Easton, Inc.</u>, 186 B.R. 603 (E.D. Pa. 1994). In <u>Fiber-Lite</u>, the court found that when a sale was orchestrated by the predecessor corporation's secured creditor to allow the predecessor corporation to escape liability for its unsecured debt, the sale was not commercially reasonable. In this situation, the plaintiff has alleged facts that could allow a finder of fact to determine that defendant Parmer did orchestrate a sale to allow her nephew's

11

company to escape liability for its unsecured debt. Specifically, the plaintiff's allegations in its complaint concerning the relationship between the parties and the terms of the sale may allow for such a presumption.

The plaintiff further states that secured creditor's failure to implement procedures designed to maximize sale proceeds renders the sale commercially unreasonable, which procedures include the notice and the pre-sale and sale procedures. "It has been held that reasonableness calls for utilization of recognized methods as they are practiced in the particular trade." Am. Jur. <u>Proof of Facts</u> 2d 1 (originally published in 1975) (citing <u>Liberty Nat'l Bank & Trust Co. of Okla. City v. Acme Tool Div. of Rucker Co.</u>, 540 F.2d 1375 (10th Cir. 1976)). As it is unclear at this time what the recognized practices are, this Court denies defendant Secure US's motion to dismiss on this matter to allow for more discovery because plaintiff's factual allegations may in fact provide a basis for relief. Based on the above findings, this Court finds that the plaintiff has stated sufficient factual allegation to state a claim upon which relief may be granted. Therefore, this Court denies defendant Secure US's motion to dismiss Count I.

2. <u>Count II: Successor Liability</u>

Under West Virginia law, "[a] successor corporation can be liable for the debts and obligations of a predecessor corporation if there was an express or implied assumption of liability, if the

transaction was fraudulent, or if some element of the transaction was not made in good faith." Syl. pt. 3, <u>Davis v. Celotex Corp.</u>, 420 S.E.2d 557 (W. Va. 1992). Further, a successor corporation may be liable also if "the successor corporation is a mere continuation or reincarnation of its predecessor." <u>Id.</u>

Defendant Secure US's claim that it is of no legal significance that the secured party, defendant Parmer, is the aunt of the principal of Secure US, Mr. Brozik, and is now conducting a business with these assets under a new company does not negate a claim of successor liability. While the fact that defendant Parmer may be the aunt of Mr. Brozik may or may not be of any legal significance, this does not mean that the successor corporation, now owned by defendant Parmer, is not a continuation or reincarnation of its predecessor. The plaintiff specifically states in its complaint that "Brozik is the organizer, manager, and sole officer of [the new company]. As such, he effectively controls all of the very same assets that he formerly controlled as the President of Secure US." Further, the plaintiff states that the new company "is managing and operating the very same security alarm business that Secure US formerly operated." The plaintiff, therefore, seems to be claiming that the new company is a reincarnation or continuation of Secure US. Taking these alleged facts as true, this Court finds that the plaintiff has alleged "enough to raise a right to relief above the speculative level"

13

under Count II. Further, this Court notes that it need not decide whether plaintiff's motion to dismiss was deficient based on the Local Rules of the Northern District of West Virginia as, even if it was not, this Court still finds that the motion fails on the merits.

B.  Motion to Set Aside Default

In defendant Parmer's motion to set aside default, she argues that she had difficulty obtaining an attorney due to various jurisdictional and conflict of interest problems. Further, she argues that she received the summons after business hours on Friday, May 25, 2012, and was therefore unable to obtain an attorney until Monday, May 28, 2012. Further, she stated that she thought she had 30 days to answer the plaintiff's complaint.[3] The plaintiff responds by stating defendant Parmer's responsive pleading was due on June 22, 2013, as it effectuated personal service on June 1, 2012. Therefore, it states that regardless of what date defendant Parmer received the summons, her responsive pleading was at least due by June 22, 2012, five days before this Court entered an entry of default. Further, the plaintiff states that defendant Parmer failed to allege good cause for setting aside the default. Specifically, the plaintiff argues that the defendant

---

[3]Defendant Parmer's answer was filed June 27, 2012. ECF No. 17.

did not take reasonably prompt action to set aside default or establish a meritorious defense to the plaintiff's complaint.

In deciding whether good cause exists to set aside the entry of default against defendant Parmer, this Court considers the factors set forth above in <u>Morandi</u> and <u>Payne</u>. First, this Court finds that the defendant Parmer has taken "reasonably prompt action" in seeking to set aside the entry of default. This Court entered the order directing the clerk to enter default against defendant Parmer on June 27, 2012. ECF No. 14. Defendant Parmer then filed an answer to the plaintiff's complaint on that same day. ECF No. 15. Thereafter, on July, 5, 2012, defendant filed a motion to set aside default. ECF No. 21. This Court finds that such a length of delay of only eight days between this Court entering the order concerning default and defendant Parmer then requesting that such default be set aside is reasonable. While it is better practice to enter both a responsive pleading and a motion to set aside default as soon as possible after the entry of default,[4] this Court does not find that such immediate action is necessary.

Further, this Court finds that while no particular defense is provided by defendant Parmer in her motion to set aside default, the record in this case does establish such a possible defense.

---

[4]<u>Panhandle Cleaning & Restoration, Inc. v. Vannest</u>, No. 5:11CV178, 2012 WL 1354572 (N.D. W. Va. Apr. 18, 2012) (finding that the defendant acted promptly by filing both the answer and motion to set aside default on the same day plaintiff requested entry of default).

15

See <u>Burton v. TJX Companies, Inc.</u>, No. 3:07-CV-760, 2008 WL 1944033 at *3 (E.D. Va. May 1, 2008) (taking into account the record of the case when defendant failed to address all of the factors involved in determining whether to set aside an entry of default). Specifically, defendant Parmer's answer provides such claimed defenses. See <u>Kristensen ex rel. Kristensen v. Spotnitz</u>, No. 3:09cv00084, 2010 WL 8753554 at *2 (W.D. Va. July 30, 2010) (finding that allegations in a defendant's answer asserting various defenses was sufficient to establish a meritorious defense). Defendant Parmer asserts, among other defenses, the statute of limitations, waiver, estoppel, and unclean hands.

Finally, as to whether or not the plaintiff would be prejudiced by this Court setting aside the entry of default, this Court finds that such prejudice would be slight. Because defendant Parmer filed the motion to vacate the entry of default eight days after default was entered, it is unlikely that the plaintiff could have taken any action during that time that would result in prejudice should this Court vacate the entry of default. However, refusing to set aside the entry of default would prejudice defendant Parmer by preventing her from presenting her defenses to the plaintiff's claims. Therefore, this Court finds that good cause exists to set aside the entry of default against defendant Parmer.

C.  Motion to Amend Complaint

The plaintiff seeks to amend its complaint by adding an additional party, Mr. Mitch Brozik, and two additional counts.  As explained above, Mitch Brozik was allegedly the owner of defendant Secure US prior to defendant Parmer purchasing the company and the plaintiff contends that defendant Parmer is Mr. Brozik's aunt.  The first count alleges that Mr. Brozik and defendant Secure US participated in a fraud against the plaintiff by fraudulently conveying the misrepresentation that Secure US wanted to engage in settlement negotiations after a judgment was entered in the plaintiff's favor in a different proceeding and a sale of Secure US's customer accounts was ordered.  The plaintiff alleges it would not have agreed to a continuation of the sale had it not been for defendant Secure US's promise to engage in negotiations.  The second count that the plaintiff wishes to include is a count for conspiracy to commit fraud.  In this count, the plaintiff alleges that defendant Parmer and defendant Secure US conspired with Mr. Brozik to help commit a fraud by having defendant Parmer act as a straw buyer by purchasing the Trust's notes and conducting a secured party sale thereafter; thus, conspiring to deprive the plaintiff of its judgment lienholder rights.

The defendants did not respond to the plaintiff's motion.  This is plaintiff's first request to amend.  It does not appear to this Court that granting the plaintiff leave to amend would

17

prejudice the defendants, nor that the amendments sought are futile or brought in bad faith. Further, as the motion was filed on October 18, 2012, it was timely, as the scheduling order in this case allows for amended pleadings to filed until October 19, 2012. Thus, the plaintiff's motion to amend is granted as unopposed.

## V. Conclusion

For the above stated reasons, defendant Secure US, Inc.'s motion to dismiss (ECF No. 11) is DENIED, defendant Betty Parmer's motion to set aside default (ECF No. 21) is GRANTED, plaintiff's motion for default judgment as moot (ECF No. 20) is DENIED, plaintiff's motion to amend its complaint (ECF No. 32) is GRANTED, and the clerk is DIRECTED to file the amended complaint, which is attached as Exhibit A to plaintiff's memorandum in support of its motion for leave to file its first amended complaint, ECF No. 33. Further, the plaintiff is DIRECTED to serve the amended complaint on the defendants. The parties served with the amended complaint shall make any defenses pursuant to Federal Rule of Civil Procedure 12 and any counterclaims or crossclaims pursuant to Federal Rule of Civil Procedure 13.

IT IS SO ORDERED.

The Clerk is DIRECTED to transmit a copy of this memorandum opinion and order to counsel of record herein.

DATED:      February 15, 2013

                                        /s/ Frederick P. Stamp, Jr.
                                        FREDERICK P. STAMP, JR.
                                        UNITED STATES DISTRICT JUDGE