IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

SECURITY ALARM FINANCING
ENTERPRISES, INC.,

    Plaintiff,

v.                              Civil Action No. 1:12CV88
                                          (STAMP)
BETTY PARMER, SECURE US, INC.
and MITCH BROZIK,

    Defendants.

**MEMORANDUM OPINION AND ORDER
GRANTING PLAINTIFF'S MOTION TO STRIKE AND
DENYING DEFENDANT MITCH BROZIK'S MOTION TO DISMISS**

I. Procedural History

Originally, Security Alarm Financing Enterprises, Inc. ("SAFE") filed the above-styled civil action in this Court only against the defendants, Secure US, Inc. ("Secure US") and Betty Parmer ("Parmer"). In its complaint, SAFE asserted a claim of successor liability as a result of the sale of defendant Secure US, in addition to seeking a declaration that SAFE's judgment lien continues to attach to defendant Secure US's assets, as the sale of defendant Secure US was not commercially reasonable. Defendant Secure US then filed a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim, which SAFE opposed. Thereafter, SAFE filed a request for entry of default as to defendant Parmer, as defendant Parmer failed to file a timely responsive pleading to SAFE's complaint. This Court then ordered that default be entered against defendant Parmer. After default

was entered, SAFE requested that this Court enter a default judgment against defendant Parmer. At that time, defendant Parmer filed a motion to set aside default.[1] SAFE then filed a motion to amend its complaint wherein it sought to add two additional claims and one additional party.

In its memorandum opinion and order, this Court first denied defendant Secure US's motion to dismiss, as this Court found that SAFE had stated sufficient factual allegations to state a claim upon which relief may be granted. This Court then determined that good cause existed to set aside default as to defendant Parmer, and denied SAFE's motion for default judgment. As to the plaintiff's amended complaint, this Court found that granting SAFE leave to amend would not prejudice the defendants, nor were the amendments sought futile or brought in bad faith.

Thereafter, SAFE filed its amended complaint, wherein it added claims for fraud and conspiracy to commit fraud. Included in these two additional claims is an additional party, defendant Mitch Brozik ("Brozik"). In response to the claims, defendant Brozik filed a motion to dismiss seeking to dismiss both Counts III and IV, which are SAFE's claims for fraud and conspiracy to commit fraud respectively. In support of his motion to dismiss, defendant

---

[1]Defendant Parmer entitled this motion and referred to her request as a motion to set aside default judgment. However, as this Court had not entered default judgment against defendant Parmer at the time of this filing, this Court construed defendant Parmer's motion as a motion to set aside default.

Brozik argued that SAFE's claim for fraud was not plead with the requisite specificity, SAFE's allegations against defendant Brozik are subject to waiver for failure to act and SAFE has failed to join an indispensable party. This Court denied defendant Brozik's motion to dismiss, but ordered SAFE to file a more definite statement as to the time, place, and contents of the false representations made by defendant Brozik. As to defendant Brozik's waiver argument and indispensable party argument, this Court found that SAFE did not waive its right to assert the claims in its amended complaint nor did SAFE fail to join an indispensable party. SAFE thereafter filed a more definite statement in compliance with this Court's order.

In response to SAFE's more definite statement, defendant Brozik has now filed a second motion to dismiss SAFE's amended complaint and defendant Secure US filed an answer and counterclaim. In support of defendant Brozik's motion to dismiss, he argues that: (1) SAFE failed to allege damages, which are a required element of fraud; and (2) SAFE waived any right to make claims based on the secured party sale because SAFE admits to having notice of the claimed defects in the sale and it failed to exercise appropriate judicial remedies to protect its purported interests. SAFE responded in opposition arguing that it has alleged cognizable damages as to its claims for fraud and SAFE has not waived its right to seek monetary damages by not seeking to enjoin the secured

party sale. Further, SAFE indicates that this Court has previously addressed and rejected both of defendant Brozik's arguments. Defendant Brozik did not file a reply.

After defendant Secure US filed its answer and counterclaim against SAFE, SAFE filed a motion to strike the counterclaim or, in the alternative, a motion to dismiss the counterclaim. In support of its motion, SAFE argues that: (1) the counterclaim should be stricken because Secure US failed to seek and obtain leave of Court to file the counterclaim; (2) even if Secure US had sought leave of Court, it could not establish good cause for permitting a counterclaim so late in the case; and (3) in the alternative, the counterclaim should be dismissed based on the doctrine of judicial estoppel. Defendant Secure US responded in opposition, arguing that SAFE asserted additional causes of action in regards to fraud for the first time, prompting a proper counterclaim by defendant Secure US and SAFE's motion to dismiss based on judicial estoppel fails because the doctrine of judicial estoppel is not applicable in this matter. SAFE filed a reply reiterating its initial arguments and further asserting that Secure US's response to SAFE's motion to strike or, in the alternative, to dismiss should be stricken as untimely.

Both defendant Brozik's motion to dismiss and SAFE's motion to strike or, in the alternative, to dismiss are fully briefed and ripe for disposition. For the reasons stated below, this Court

denies defendant Brozik's motion to dismiss and grants SAFE's motion to strike.

## II. Facts

This action arises out of the sale of defendant Secure US to defendant Parmer. In 2010, a judgment was entered in favor of SAFE against defendant Secure US in the amount of $1,132,028.42. This judgment was the result of counterclaims filed by SAFE in a separate proceeding for defamation, tortious interference, and common law unfair competition. Thereafter, SAFE registered a certified copy of the judgment with this Court. At that time, SAFE obtained a lien upon defendant Secure US's assets after this Court issued a writ of fieri facias. SAFE then filed a motion for the sale of defendant Secure US's customer accounts, which defendant Secure US opposed. The Milan Puskar Amended and Restated Revocable Trust ("the Trust"), an entity that alleged it had a superior lien on defendant Secure US's property in the amount of $4.4 million, then intervened to oppose the sale as well. Both the Trust and defendant Secure US opposed the sale by stating that the sale amount would not satisfy the Trust's lien. United States Magistrate Judge James E. Seibert then found that SAFE's motion for sale should be granted and this Court agreed, overruling objections from the Trust and defendant Secure US.

Defendant Secure US then requested that SAFE agree to postpone the sale to pursue additional settlement negotiations. SAFE and

defendant Secure US filed a proposed agreed order continuing the sale for the purpose of engaging in settlement discussions. This Court then issued an order continuing such sale until May 16, 2012, for the purpose of working towards a settlement. SAFE alleges that after this Court issued the order, defendant Secure US refused to continue settlement negotiations. SAFE contends that on April 20, 2012, it received a notice in the mail regarding a secured party sale of defendant Secure US's assets. This notice stated that such sale would take place on May 5, 2012. SAFE alleges that defendant Brozik, as President of Secure US at the time, was responsible for providing the instructions regarding the settlement negotiations, including the instruction to obtain a continuance. SAFE asserts that defendant Brozik's representation that Secure US intended to continue to pursue good faith negotiations was false and that defendant Brozik had already contacted defendant Parmer to advise her of the allegedly bogus secured party sale.

SAFE asserts that defendant Parmer bought the Trust's notes for $2.5 million prior to the scheduled sale. SAFE further asserts that defendant Parmer is defendant Brozik's aunt, and has no history in the security alarm business, which defendant Secure US conducts. Defendant Brozik was the owner of defendant Secure US until defendant Parmer eventually purchased defendant Secure US. SAFE contends that it sent a letter objecting to the sale based on irregularities and unusual terms that would discourage buyers,

which reached the attorney who would be conducting the sale. SAFE further contends that the attorney conducting the sale did not adequately respond to potential buyers, specifically a Mr. Patrick Egan.

Regarding the sale itself, SAFE asserts that numerous issues existed. Specifically, SAFE alleges that potential buyers were only allowed to walk through the office and look around, and no inspection of what was contained in the file cabinets was allowed. Further, SAFE alleges that the potential buyers were denied access to Secure US's warehouse, which contained contents that were part of the auction. SAFE also alleges that instead of defendant Parmer accepting a $3.6 million cash bid for the assets, defendant Parmer purchased the assets of the company for $4 million by issuing a credit bid.

SAFE asserts that after purchasing these asserts, defendant Parmer retained defendant Brozik's new company, MB Security, to manage, control, and operate the assets as a security alarm monitoring business. SAFE further asserts that defendant Brozik uses MB Security to manage and control the assets that defendant Parmer purchased from defendant Secure US, in the exact same manner he used them to run defendant Secure US prior to its sale.

### III. Applicable Law

In assessing a motion to dismiss for failure to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a

court must accept all well-pled facts contained in the complaint as true. <u>Nemet Chevrolet, Ltd v. Consumeraffairs.com, Inc</u>, 591 F.3d 250, 255 (4th Cir. 2009). However, "legal conclusions, elements of a cause of action, and bare assertions devoid of further factual enhancement fail to constitute well-pled facts for Rule 12(b)(6) purposes." <u>Id.</u> (citing <u>Ashcroft v. Iqbal</u>, 129 S. Ct. 1937, 1949 (2009)). This Court also declines to consider "unwarranted inferences, unreasonable conclusions, or arguments." <u>Wahi v. Charleston Area Med. Ctr., Inc.</u>, 562 F.3d 599, 615 n.26 (4th Cir. 2009).

It has often been said that the purpose of a motion under Rule 12(b)(6) is to test the formal sufficiency of the statement of the claim for relief; it is not a procedure for resolving a contest about the facts or the merits of the case. 5B Charles Alan Wright & Arthur R. Miller, <u>Federal Practice and Procedure</u> § 1356 (3d ed. 1998). The Rule 12(b)(6) motion also must be distinguished from a motion for summary judgment under Federal Rule of Civil Procedure 56, which goes to the merits of the claim and is designed to test whether there is a genuine issue of material fact. <u>Id.</u> For purposes of the motion to dismiss, the complaint is construed in the light most favorable to the party making the claim and essentially the court's inquiry is directed to whether the allegations constitute a statement of a claim under Federal Rule of Civil Procedure 8(a). <u>Id.</u> § 1357.

A complaint should be dismissed "if it does not allege 'enough facts to state a claim to relief that is plausible on is face.'" Giarratano v. Johnson, 521 F.3d 298, 302 (4th Cir. 2008) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "Facial plausibility is established once the factual content of a complaint 'allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" Nemet Chevrolet, 591 F.3d at 256 (quoting Iqbal, 129 S. Ct. at 1949). Detailed factual allegations are not required, but the facts alleged must be sufficient "to raise a right to relief above the speculative level." Twombly, 550 U.S. at 555.

IV. Discussion

A. SAFE's Motion to Strike Defendant Secure US's Counterclaim

Defendant Secure US's counterclaim asserted in response to SAFE's more definite statement contains two separate counts. Count I of the counterclaim is a claim for breach of contract. Defendant Secure US asserts that SAFE breached an alleged settlement contract between the parties when SAFE demanded an additional $500,000.00 to settle the claims after there had been a meeting of the minds as to the original settlement agreement. Count II is defendant Secure US's claim for fraud against SAFE. Defendant Secure US alleges that SAFE fraudulently entered into negotiations with the intention of causing irreparable damage to defendant Secure US.

SAFE contends that defendant Secure US's counterclaim should be stricken because it failed to seek leave of court and, even if it had sought leave of Court, defendant Secure US could not establish good cause for permitting a counterclaim so late in the litigation. Initially, this Court notes that in accordance with Rule 15(a)(3) of the Federal Rules of Civil Procedure, "[u]nless the court orders otherwise, any required response to an amended pleading must be made within the time remaining to respond to the original pleading or within 14 days after service of the amended pleading, whichever is later." Rule 15, however, does not speak to whether new claims may be asserted in such response. While the United States Court of Appeals for the Fourth Circuit has not spoken as to the issue of whether a party may assert a new counterclaim in response to an amended complaint without leave of court, other district courts have, including district courts within the Fourth Circuit. Most courts have found that

> 'when a plaintiff files an amended complaint which changes the theory or scope of the case, the defendant is allowed to plead anew as though it were the original complaint filed by the Plaintiff . . . . The obvious corollary is that if an amended complaint does not change the theory or scope of the case, a [defendant] must seek leave of court pursuant to Rule 15(a) before it can amend its answer to assert a counterclaim.'

Tralon Corp. v. Cedarpids, Inc., 966 F. Supp. 812, 832 (N.D. Iowa 1997) (quoting Brown v. E.F. Hutton & Co., 610 F.Supp. 76, 78 (S.D. Fla. 1985)); E.E.O.C. v. Morgan Stanley & Co., Inc., 211 F.R.D. 225, 226-27 (S.D. N.Y. 2002); see Elite Entertainment, Inc. v.

Khela Brothers Entertainment, 227 F.R.D. 444, 447 (E.D. Va. 2005) (citing 3 James W. Moore, et al., Moore's Federal Practice § 15.17[6] (3d ed. 1997)).  In support of such rule, the court in Morgan Stanley stated that "[i]f every amendment, no matter how minor or substantive, allowed defendants to assert counterclaims or defenses as of right, claims that would otherwise be barred or precluded could be revived without cause.  This would deprive the Court of its ability to effectively manage the litigation."  211 F.R.D. at 227.  This Court finds such reasoning persuasive.

Defendant Secure US argues that SAFE has asserted additional causes of action is regards to fraud for the first time, which prompted defendant Secure US's counterclaim for breach of contract and fraud.  This Court finds, however, that SAFE has not asserted additional causes of action that would prompt the type of counterclaims asserted by Secure US.  In making its more definite statement, SAFE only included the following additional two paragraphs:

> 93.  As the President of Secure US, Brozik was the sole Secure US representative responsible for negotiating the potential settlement with SAFE.  Brozik provided instructions to Mr. Kupec regarding the settlement negotiations, including (but not limited to) the instruction to obtain a continuance of SAFE's court-ordered sale so that Parmer could conduct a bogus secured party sale.
>
> 94.  Brozik knew that the representation that Secure US intended to pursue good faith negotiations was false when he instructed Mr. Kupec to convey that representation to SAFE (and this Court) on April 13, 2012.  At that time, Brozik had already (1) determined that Secure US would

11

>     not pursue any further settlement negotiations with SAFE
>     and (2) contacted Parmer to advise her about the
>     recently-concocted scheme to conduct a bogus secured
>     party sale.

ECF No. 86 *16. Defendant Secure US failed to explain in its response to the motion to strike how such paragraphs modified the claims against Secure US specifically and this Court is unable to discern any such modification. These above-cited paragraphs only modified SAFE's claims as they pertained to defendant Brozik and his involvement in the alleged fraud. Accordingly, because SAFE's theory and scope of the case has not changed in regards to defendant Secure US and defendant Secure US failed to seek leave of court to add its counterclaim, this Court grants SAFE's motion to strike. Due to this Court granting SAFE's motion to strike, SAFE's motion in the alternative to dismiss the counterclaim is rendered moot.

B.  <u>Defendant Brozik's Motion to Dismiss</u>

   1.  <u>Damages Arguments</u>

Defendant Brozik makes two main arguments in his motion to dismiss Counts III and IV of SAFE's more definite statements. Defendant Brozik first argues that SAFE's claim for fraud, and thus SAFE's conspiracy to commit fraud claim is legally insufficient because it fails to allege any cognizable damages. First, this Court must begin by noting that both of defendant Brozik's arguments have been addressed in this Court's order on defendant Brozik's first motion to dismiss SAFE's second amended complaint.

12

See ECF No. 84 *10-12. Nonetheless, this Court will take up such arguments again.

Under West Virginia law, the essential elements of fraud are as follows:

> (1) that the act claimed to be fraudulent was the act of the defendant or induced by him; (2) that it was material and false; that plaintiff relied upon it and was justified under the circumstances in relying upon it; and (3) that he was damaged because he relied upon it.

Poling v. Pre-Paid Legal Servs., Inc., 575 S.E.2d 199, 202 (W. Va. 2002) (quoting Horton v. Tyree, 139 S.E. 737, 738 (W. Va. 1927)). In this matter, defendant Brozik claims that SAFE failed to plead the damages element. In support of this assertion, defendant Brozik argues that testimony has been offered that Secure US was not worth more than $2.59 million in a distressed situation and no more than $3.71 million in a non-distressed situation. Accordingly, defendant Brozik states that because SAFE was a junior lienholder to defendant Parmer's $4.4 million lien, no excess funds would have been available for SAFE's recovery even if the sale was reasonable and SAFE's junior lien would have been extinguished. This Court finds that such an argument requires much speculation into what SAFE can and cannot prove and the worth of the assets at issue. Accordingly, this Court cannot grant defendant Brozik's motion to dismiss based on such argument.

Defendant Brozik also argues that SAFE cannot prove damages because such damages would be precluded by SAFE's failure to

mitigate. Defendant Brozik asserts that SAFE had the opportunity to prevent the sale from occurring but instead, allowed the sale to continue hoping it would later find a way to satisfy its lien. This Court finds that such argument is not a proper argument at this stage of the litigation. In determining whether to grant or deny a motion to dismiss for the failure to state a claim upon which relief may be granted, this Court is tasked with the responsibility to determine whether the allegations constitute a statement of a claim under Federal Rule of Civil Procedure 8(a). Whether SAFE should have sought to enjoin the sale involves questions of fact for the fact-finder to determine at the appropriate time. This Court cannot at this time say, based on the facts presented to it, that SAFE did in fact fail to mitigate its alleged damages.

Defendant Brozik next argues that SAFE's request for attorneys' fees also does not satisfy the damages requirement. In its order previously denying defendant Brozik's first motion to dismiss, this Court specifically stated the following:

> As the plaintiff notes, however, it is well established that under West Virginia law, a plaintiff who has been injured by the fraudulent conduct of a defendant is entitled to an award of attorneys' fees. <u>Bowling v. Ansted Chrysler-Plymouth-Dodge Inc.</u>, 425 S.E.2d 144 (W. Va. 1992). In his reply, defendant Brozik seems to argue that it is impossible for SAFE to have been injured by any of Brozik's alleged misrepresentations, and therefore, impossible for it to have incurred any damages as a result of such misrepresentations. This Court disagrees. SAFE is at least alleging that based on misrepresentations made that resulted in the postponement

14

> of SAFE's court-ordered sale of defendant Secure US, it
> was injured, as it incurred attorneys' fees seeking a
> declaration that the secured party sale was a sham that
> did not extinguish SAFE's judgment lien on defendant
> Secure US's assets. This Court finds such a claim is
> sufficient to satisfy the damages element of the fraud
> claim.

ECF No. 84 *11. Defendant Brozik asserts in this motion to dismiss that the majority of courts have held that attorneys' fees alone cannot satisfy the damage or injury element of a claim for fraud. Even if this Court were to now accept defendant Brozik's argument that attorneys' fees are not sufficient to establish damages in an action for fraud, West Virginia has held that a plaintiff's measure of damages in an action for fraud "would be <u>any</u> injury incurred as a result of the defendant's fraudulent conduct." <u>Persinger v. Peabody Coal Co.</u>, 474 S.E.2d 887, 899 (W. Va. 1996). Such damages include those for "full compensation for all injuries directly or indirectly resulting from the wrong" and punitive or exemplary damages. <u>Id.</u> "Damages for annoyance and inconvenience are properly included in compensatory damages." <u>Id.</u> at 899 n.18.

In paragraph 96 of SAFE's second amended complaint, SAFE asserts that it

> has suffered significant damages, including (but not
> limited to) the fact that SAFE: (a) lost its rights to
> conduct its Court ordered judgment lien sale, (b) has
> been forced to file this lawsuit and incur attorney's
> fees . . . and (c) had its prior lawsuit was [sic]
> dismissed due to Secure US' [sic] claim that SAFE's
> judgment lien was extinguished.

15

ECF No. 86 *17. Thus, SAFE is seeking compensatory damages in addition to attorneys' fees for the loss of its right to conduct the sale, which was an injury directly or indirectly resulting from the alleged fraud, and for the dismissal of its prior lawsuit, which again is either a direct or indirect injury resulting from the alleged fraud. This Court need not at this time venture into the worth of such claims, as that is a fact specific determination, which is not appropriately decided on a motion to dismiss.

    2.   <u>Waiver Argument</u>

Defendant Brozik next makes the argument that SAFE has waived its right to assert any claims relating to the sale of assets, because SAFE chose not to take any action to prevent such sale. This Court previously rejected this same argument in defendant Brozik's first motion to dismiss. Defendant Brozik, however, has added additional case law to support his argument, and thus, this Court will address such argument again.

In West Virginia, to establish waiver, "there must be evidence demonstrating that a party has intentionally relinquished a known right." <u>Potesta v. U.S. Fidelity & Guar. Co.</u>, 504 S.E.2d 135, 142 (W. Va. 1998) (citations omitted). The waiver may be expressed or implied but if the waiver is implied, "there must be clear and convincing evidence of the party's intent to relinquish the known right." <u>Id.</u> The party asserting waiver has the burden of

establishing the defense.  Id.  Accordingly, in this instance, the burden is upon the defendant to prove such waiver.

Defendant Brozik now argues that courts have interpreted the Uniform Commercial Code § 9-315, codified at West Virginia Code § 46-9-315, to state that a creditor who knew of but did not prevent the sale of its collateral had waived its security interest.  This Court finds such argument inapplicable to SAFE's fraud claim.  Both cases cited by defendant Brozik deal with the waiver of a party's lien on the collateral.  The cases do not discuss nor apply to the waiver of a party's tort claims.  See Lifewise Master Funding v. Telebank, 374 F.3d 917, 923-24 (10th Cir. 2004); Neu Cheese, Co. v. Federal Deposit Ins. Corp., 825 F.2d 1270, 1272 (8th Cir. 1987).  Accordingly, the addition of such case law does not change this Court's previous finding that defendant Brozik has failed to prove by clear and convincing evidence that SAFE waived its right to assert its fraud claim against the defendants.

## V. Conclusion

For the reasons stated above, Security Alarm Financing Enterprises, Inc.'s motion to strike Secure US, Inc.'s counterclaim (ECF No. 96) is GRANTED, and Security Alarm Financing Enterprises, Inc.'s motion in the alternative to dismiss the counterclaim (ECF No. 96) is DENIED AS MOOT.  Further, defendant Mitch Brozik's motion to dismiss (ECF No. 88) is DENIED.

IT IS SO ORDERED.

The Clerk is DIRECTED to transmit a copy of this memorandum opinion and order to counsel of record herein.

DATED:     February 21, 2014

                                        /s/ Frederick P. Stamp, Jr.
                                        FREDERICK P. STAMP, JR.
                                        UNITED STATES DISTRICT JUDGE