IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

SECURITY ALARM FINANCING
ENTERPRISES, INC.,

      Plaintiff,

v.                              Civil Action No. 1:12CV88
                                         (STAMP)
BETTY PARMER, SECURE US, INC.
and MITCH BROZIK,

      Defendants.

## MEMORANDUM OPINION AND ORDER
### DENYING MOTIONS FOR SUMMARY JUDGMENT AND
### DENYING MOTION TO STRIKE RESPONSE IN SUPPORT OF
### DEFENDANT BROZIK'S MOTION FOR PARTIAL SUMMARY JUDGMENT

### I.  Procedural History

Originally, Security Alarm Financing Enterprises, Inc. ("SAFE") filed the above-styled civil action in this Court only against the defendants, Secure US, Inc. ("Secure US") and Betty Parmer ("Parmer"). In its complaint, SAFE asserted a claim of successor liability as a result of the sale of Secure US, in addition to seeking a declaration that SAFE's judgment lien continues to attach to Secure US's assets, as the sale of Secure US was not commercially reasonable. Secure US then filed a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim, which SAFE opposed. Thereafter, SAFE filed a request for entry of default as to Parmer, as Parmer failed to file a timely responsive pleading to SAFE's complaint. This Court then ordered that default be entered against Parmer. After default was

entered, SAFE requested that this Court enter a default judgment against Parmer.  At that time, Parmer filed a motion to set aside default.[1]  SAFE then filed a motion to amend its complaint wherein it sought to add two additional claims and one additional party.

In its memorandum opinion and order, this Court first denied Secure US's motion to dismiss, as this Court found that SAFE had stated sufficient factual allegations to state a claim upon which relief may be granted.  This Court then determined that good cause existed to set aside default as to Parmer, and denied SAFE's motion for default judgment.  As to the plaintiff's amended complaint, this Court found that granting SAFE leave to amend would not prejudice the defendants, nor were the amendments sought futile or brought in bad faith.

Thereafter, SAFE filed its amended complaint, wherein it added claims for fraud and conspiracy to commit fraud.  Included in these two additional claims is an additional party, defendant Mitch Brozik ("Brozik").  In response to the claims, Brozik filed a motion to dismiss seeking to dismiss both Counts III and IV, which are SAFE's claims for fraud and conspiracy to commit fraud respectively.  This Court denied Brozik's motion to dismiss, but ordered SAFE to file a more definite statement as to the time,

---

[1]Parmer entitled this motion and referred to her request as a motion to set aside default judgment.  However, as this Court had not entered default judgment against Parmer at the time of this filing, this Court construed Parmer's motion as a motion to set aside default.

place, and contents of the false representations made by Brozik. As to Brozik's waiver argument and indispensable party argument, this Court found that SAFE did not waive its right to assert the claims in its amended complaint nor did SAFE fail to join an indispensable party. SAFE thereafter filed a more definite statement in compliance with this Court's order.

Brozik then filed a second motion to dismiss, and Secure US filed an answer and a counterclaim. In response to the counterclaim, SAFE filed a motion to strike the counterclaim or in the alternative to dismiss the counterclaim. This Court granted SAFE's motion to strike, finding that SAFE did not change the theory and scope of the case in regards to Secure US so as to allow such amendment without leave of court and Secure US failed to seek such leave to add its counterclaim. As to Brozik's second motion to dismiss, this Court denied the motion, finding that SAFE adequately pled its claim for fraud and again finding that SAFE did not waive its right to assert any claims in its amended complaint.

After Brozik and Secure US filed motions to amend the scheduling order, Brozik and SAFE filed motions for summary judgment. Brozik seeks summary judgment as to the fraud and conspiracy claims. Specifically, he argues that SAFE has failed to sustain its claim for fraud because: (1) exercising a legal right is not fraud; (2) SAFE has failed to prove actual fraud; and (3) SAFE has sustained no actual damages. As to SAFE's conspiracy

claim, Brozik argues that SAFE has failed to sustain such claim because: (1) Parmer's testimony evidences a lack of a conspiracy and without her, the conspiracy as to all parties fails; (2) financial support from Parmer does not evidence conspiracy; (3) conspiracy to commit fraud requires injury and there is no injury here; and (4) SAFE did not allege Parmer participated in fraud. SAFE filed a response in opposition to such arguments, and Brozik replied.

Secure US also filed a response to Brozik's motion. This response states that Secure US finds Brozik's motion for summary judgment to be well founded, and joins in his motion. SAFE then filed a motion to strike this response as an untimely attempt to file a dispositive motion. Secure US did not file any response to SAFE's motion to strike. This Court denies SAFE's motion to strike, but nonetheless, will not consider Secure US's motion as a separate motion for summary judgment.

In SAFE's motion for summary judgment as to all claims, it argues that: (1) because the secured party sale was a "friendly" sale intended to avoid Secure US's creditors, SAFE's judgment lien was not extinguished; (2) Parmer is liable for judgment as a successor to Secure US; (3) Secure US and Brozik participated in a fraudulent scheme to prevent SAFE from exercising its rights as a judgment creditor; and (4) defendants participated in a civil conspiracy to prevent SAFE from exercising its rights as a judgment

creditor.  Both Secure US and Brozik filed timely responses to SAFE's motion for summary judgment.  Parmer filed an untimely response.  SAFE separately replied to each response.

For the reasons stated below, this Court denies Brozik's motion for summary judgment and denies SAFE's motion for summary judgment.

## II.  Facts

This action arises out of the sale of Secure US to Parmer.  In 2010, a judgment was entered in favor of SAFE against Secure US in the amount of $1,132,028.42.  This judgment was the result of counterclaims filed by SAFE in a separate proceeding for defamation, tortious interference, and common law unfair competition.  Thereafter, SAFE registered a certified copy of the judgment with this Court.  At that time, SAFE obtained a lien upon Secure US's assets after this Court issued a writ of fieri facias. SAFE then filed a motion for the sale of Secure US's customer accounts, which Secure US opposed.  The Milan Puskar Amended and Restated Revocable Trust ("the Trust"), an entity that alleged it had a superior lien on Secure US's property in the amount of $4.4 million, then intervened to oppose the sale as well.  Both the Trust and Secure US opposed the sale by stating that the sale amount would not satisfy the Trust's lien.  United States Magistrate Judge James E. Seibert then found that SAFE's motion for

sale should be granted and this Court agreed, overruling objections from the Trust and Secure US.

Secure US then requested that SAFE agree to postpone the sale to pursue additional settlement negotiations. SAFE and Secure US filed a proposed agreed order continuing the sale for the purpose of engaging in settlement discussions. This Court then issued an order continuing such sale until May 16, 2012, for the purpose of working towards a settlement. SAFE alleges that after this Court issued the order, Secure US refused to continue settlement negotiations. SAFE contends that on April 20, 2012, it received a notice in the mail regarding a secured party sale of Secure US's assets. This notice stated that such sale would take place on May 5, 2012. SAFE alleges that Brozik, as President of Secure US at the time, was responsible for providing the instructions regarding the settlement negotiations, including the instruction to obtain a continuance. SAFE asserts that Brozik's representation that Secure US intended to continue to pursue good faith negotiations was false and that Brozik had already contacted Parmer to advise her of the allegedly bogus secured party sale.

SAFE asserts that Parmer bought the Trust's notes for $2.5 million prior to the scheduled sale. SAFE further asserts that Parmer is Brozik's aunt, and has no history in the security alarm business, which Secure US conducts. Brozik was the owner of Secure US until Parmer eventually purchased Secure US. SAFE contends that

it sent a letter objecting to the sale based on irregularities and unusual terms that would discourage buyers, which reached the attorney who would be conducting the sale. SAFE further contends that the attorney conducting the sale did not adequately respond to potential buyers, specifically a Mr. Patrick Egan.

Regarding the sale itself, SAFE asserts that numerous issues existed. Specifically, SAFE alleges that potential buyers were only allowed to walk through the office and look around, and no inspection of what was contained in the file cabinets was allowed. Further, SAFE alleges that the potential buyers were denied access to Secure US's warehouse, which contained contents that were part of the auction. SAFE also alleges that instead of Parmer accepting a $3.6 million cash bid for the assets, Parmer purchased the assets of the company for $4 million by issuing a credit bid.

SAFE asserts that after purchasing these asserts, Parmer retained Brozik's new company, MB Security, to manage, control, and operate the assets as a security alarm monitoring business. SAFE further asserts that Brozik uses MB Security to manage and control the assets that Parmer purchased from Secure US, in the exact same manner he used them to run Secure US prior to its sale.

### III.  Applicable Law

Under Rule 56(c) of the Federal Rules of Civil Procedure,

A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:
(A) citing to particular parts of materials in the record, including depositions, documents, electronically

> stored information, affidavits or declarations, stipulations . . . admissions, interrogatory answers, or other materials; or
>      (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c). The party seeking summary judgment bears the initial burden of showing the absence of any genuine issues of material fact. See Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). "The burden then shifts to the nonmoving party to come forward with facts sufficient to create a triable issue of fact." Temkin v. Frederick County Comm'rs, 945 F.2d 716, 718 (4th Cir. 1991), cert. denied, 502 U.S. 1095 (1992) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986)). However, as the United States Supreme Court noted in Anderson, "Rule 56(e) itself provides that a party opposing a properly supported motion for summary judgment may not rest upon the mere allegations or denials of his pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." Id. at 256. "The inquiry performed is the threshold inquiry of determining whether there is the need for a trial -- whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." Id. at 250; see also Charbonnages de France v. Smith, 597 F.2d 406, 414 (4th Cir. 1979) (Summary judgment "should be granted only in those cases where it is perfectly clear that no

issue of fact is involved and inquiry into the facts is not desirable to clarify the application of the law." (citing <u>Stevens v. Howard D. Johnson Co.</u>, 181 F.2d 390, 394 (4th Cir. 1950))).

In <u>Celotex</u>, the Supreme Court stated that "the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." <u>Celotex</u>, 477 U.S. at 322. In reviewing the supported underlying facts, all inferences must be viewed in the light most favorable to the party opposing the motion. See <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 587 (1986).

## IV.  <u>Discussion</u>

### A.  <u>Defendant Brozik's Motion for Summary Judgment</u>

Brozik argues that this Court should grant summary judgment in Brozik's favor as to SAFE's fraud claim and SAFE's conspiracy claim.  Accordingly, this Court will discuss each claim in turn.

#### 1.  <u>Fraud Claim</u>

Brozik argues that this Court should dismiss SAFE's claim for fraud because Parmer had the right to institute a foreclosure sale pursuant to West Virginia Code § 46-9-610(a) and, while SAFE may have also had foreclosure rights, Parmer's rights were superior as she was the senior lienholder.  Exercising this right, Brozik

asserts cannot be considered the basis for a claim for fraud.  SAFE

argues in response that Secure US and Brozik cannot commit fraud to

enable Parmer to become the secured party in Secure US, and then

rely on Parmer's exercise of rights that she obtained as a result

of the fraud to escape liability.

Under West Virginia law, the essential elements of fraud are

as follows:

> (1) that the act claimed to be fraudulent was the act of
> the defendant or induced by him; (2) that it was material
> and false; that plaintiff relied upon it and was
> justified under the circumstances in relying upon it; and
> (3) that he was damaged because he relied upon it.

Poling v. Pre-Paid Legal Servs., Inc., 575 S.E.2d 199, 202 (W. Va.

2002) (quoting Horton v. Tyree, 139 S.E. 737, 738 (W. Va. 1927)).

SAFE is claiming that the defendants participated in a fraudulent

scheme that enabled Parmer to obtain the secured party rights,

which then enabled Parmer to exercise those rights.  SAFE is not

alleging that the exercise of those rights alone constitutes fraud,

but rather, that the situation taken as a whole was fraudulent.

Brozik, in support of his argument that it cannot be

fraudulent to exercise a person's legal right, provides two

citations, only one of which this Court need distinguish, as the

remaining citation is not a case cite, but rather a citation to an

appellate brief for a case not yet decided.[2]  The actual case law

---

[2]See ECF No. 105 *6 (citing PDVSA Petroleo, S.A., v. Trigeant, Ltd., No 12-40062, 2013 WL 3803133 (5th Cir. July 15, 2013)).

cited by Brozik is <u>Hablas v. Armour & Co.</u>, 270 F.2d 71 (8th Cir. 1959). The United States Court of Appeals for the Eighth Circuit in <u>Hablas</u> found that it was defendant's lawful right to discharge the plaintiff, and therefore, such discharge could not constitute the basis for the plaintiff's action for wrongful discharge. <u>Id.</u> at 79. In this instance, the actual sale of the assets, which Parmer may have had the legal right to enforce, is not the sole basis for the fraud, but is merely one part of the alleged fraud. Thus, SAFE is not challenging one event, like the plaintiff in <u>Hablas</u>, but is challenging the actions of the parties as a whole that were allegedly fraudulent.

Further, it is worth noting that prior to discussing the plaintiff's claim for wrongful discharge, the court in <u>Hablas</u> discussed the plaintiff's claim for common law fraud. The plaintiff claimed that while he was also wrongfully discharged, he was induced to continue his employment prior to his discharge by fraudulent representations. <u>Id.</u> at 75. Rather than merely stating that because the defendant had the right to discharge the plaintiff he could not claim fraud, the court assessed the plaintiff's fraud claim based on the entirety of the facts before it. <u>Id.</u> at 75-78. This is the more analogous situation to the instant action. SAFE claims that the alleged fraudulent actions of the defendants resulted in Parmer's ability to conduct the sale, not that the exercise of such rights was the sole act of fraud. Thus, the facts

11

as a whole must be taken into account to determine whether or not the defendants did in fact act fraudulently.

Brozik next argues that SAFE's fraud claim fails because SAFE has failed to prove actual fraud. "Actual fraud is intentional, and consists of intentional deception to induce another to part with property or to surrender some legal right, and which accomplishes the end designed." Stanley v. Sewell Coal Co., 285 S.E.2d 679, 683 (W. Va. 1981). Brozik attempts to argue that SAFE cannot prove actual fraud because there is no evidence that the defendants caused SAFE to "part with property or surrender a legal right." Brozik asserts that whether the sale was postponed, or not, did not change SAFE's legal right to the court-ordered sale or SAFE's ability to seek relief from the Court after it became concerned about the parties' agreement to negotiate a settlement.

This Court finds Brozik's argument unpersuasive. SAFE is arguing that the alleged fraudulent conduct regarding the possible settlement negotiations caused SAFE to lose its right to the court-ordered sale. This Court finds that SAFE has alleged sufficient facts to establish such a claim. Brozik's attempt to again imply that SAFE's failure to seek relief from the Court after SAFE became aware that Secure US would not longer participate in settlement negotiations, is unavailing. Brozik is essentially attempting to make the argument that he twice made in his previous motions to dismiss. In the motions to dismiss, Brozik argued that SAFE waived

12

its right to assert a fraud claim by not seeking relief from this Court prior to the sale being conducted by Parmer; thus, asserting that no legal right was actually given up. Rather than explaining for the third time why such argument is without merit, this Court feels that it is sufficient to direct the parties to this Court's orders concerning Brozik's motions to dismiss, wherein this Court twice discussed Brozik's waiver argument. See ECF Nos. 84 and 127.

Brozik's final argument as to why SAFE's fraud claim fails is that SAFE admits that the only damages it suffered based on the alleged fraud are attorneys' fees. Brozik asserts that attorneys' fees alone cannot satisfy the damages element of a fraud claim. First, this Court notes that after reviewing the record in this case, SAFE did not admit that the only damages it suffered were attorneys' fees. Second, this Court notes that Brozik has made the argument concerning the lack of damages twice before in both of his motions to dismiss. This Court finds that Brozik has not brought any new information or case law to this Court's attention that would alter this Court's previous findings. This Court stated the following concerning Brozik's damages argument in its order on Brozik's second motion to dismiss:

> Even if this Court were to now accept defendant Brozik's argument that attorneys' fees are not sufficient to establish damages in an action for fraud, West Virginia has held that a plaintiff's measure of damages in an action for fraud "would be <u>any</u> injury incurred as a result of the defendant's fraudulent conduct." <u>Persinger v. Peabody Coal Co.</u>, 474 S.E.2d 887, 899 (W. Va. 1996). Such damages include those for "full compensation for all

injuries directly or indirectly resulting from the wrong"
and punitive or exemplary damages. <u>Id.</u> "Damages for
annoyance and inconvenience are properly included in
compensatory damages." <u>Id.</u> at 899 n.18.

In paragraph 96 of SAFE's second amended complaint, SAFE
asserts that it

> has suffered significant damages, including (but not
> limited to) the fact that SAFE: (a) lost its rights to
> conduct its Court ordered judgment lien sale, (b) has
> been forced to file this lawsuit and incur attorney's
> fees . . . and (c) had its prior lawsuit was [sic]
> dismissed due to Secure US' [sic] claim that SAFE's
> judgment lien was extinguished.

ECF No. 86 *17. Thus, SAFE is seeking compensatory damages in
addition to attorneys' fees for the loss of its right to conduct
the sale, which was an injury directly or indirectly resulting from
the alleged fraud, and for the dismissal of its prior lawsuit,
which again is either a direct or indirect injury resulting from
the alleged fraud. ECF No. 127 *14-15. Brozik argues that because
Parmer purchased Secure US's assets for more than what they were
valued at, SAFE cannot show that it incurred any damages as a
result of the loss of its right to conduct the sale. This Court
finds that there is a genuine issue of material fact as to what the
loss of this right was worth, as the sale is alleged to be part of
the fraudulent scheme. Thus, if a jury finds that the sale was not
properly conducted and part of a fraudulent scheme, it will be up
to the jury to determine what the worth of the assets was at the
time of the sale and if the loss of the right to conduct the sale
caused SAFE to incur any damages.

14

2.   Conspiracy Claim

A civil conspiracy, under West Virginia law, is

a combination of two or more persons by concerted action
to accomplish an unlawful purpose or to accomplish some
purpose, not in itself unlawful, by unlawful means.  The
cause of action is not created by the conspiracy but by
the wrongful acts done by the defendants to the injury of
the plaintiff.

Dixon v. Am. Indus. Leasing Co., 253 S.E.2d 150, 152 (W. Va. 1979).

"The elements of a civil conspiracy claim are met therefore when it

is proven that (1) two or more people who are named as defendants

(2) agreed to commit overt tortious act(s) for a common purpose (3)

committed the overt tortious act(s) (4) proximately causing

Plaintiff harm."   Marfolk Coal Co., Inc. v. Smith, 274 F.R.D. 193,

197 n.4 (S.D. W. Va. 2011).

Brozik initially argues that SAFE's conspiracy claim fails

because there is a lack of evidence that Parmer participated in the

conspiracy and that without Parmer, SAFE's conspiracy claim must

fail.   In support of this argument, Brozik cites portions of

Parmer's deposition indicating that Parmer was unaware of any

judgment obtained by SAFE, unaware that she had even purchased

Secure US's assets, and unaware of the secured party sale.

Further, Brozik argues that the fact that Parmer provided financial

support to Brozik is not a basis for conspiracy.   In response to

such argument, SAFE asserts that Parmer was a co-conspirator even

though she may not have fully understood all aspects of the

conspiracy.   SAFE argues that evidence exists to show that Parmer

was aware of the general goal of the conspiracy and that is sufficient. Specifically, SAFE cites Brozik's deposition, wherein he states that he told Parmer about his need for her to purchase the notes from the Trust and thereafter foreclose on the notes.

After reviewing the depositions of both Parmer and Brozik, this Court finds that the depositions taken together create a genuine issue of material fact as to whether Parmer did in fact engage in the conspiracy. See ECF Nos. 105 Ex. B and 102 Ex. A. While Parmer attempts to claim she was unaware of the sale and even unaware that she was purchasing the notes from the Trust, Brozik states the exact opposite. Brozik stated that he explained to Parmer that she was going to purchase the notes and actually foreclose on those notes as well. See ECF No. 102 Ex. A *18. Further, Brozik states that he explained to her that she would also be the purchaser at the foreclosure sale. Id. Such contradictory evidence produces a genuine issue of material fact that must be presented to the finder of fact and cannot be resolved on summary judgment.

Further, this Court finds that Parmer's financial support can in fact be considered evidence of a conspiracy and, thus, finds Brozik's argument to the contrary to be without merit. See United States v. Vest, 842 F.2d 1319, 1327 (1st Cir. 1988) (finding that evidence of payments are probative to the existence of whether the defendant was a member of the conspiracy); see also United States

16

v. Mills, 995 F.2d 480, 485 n.1 (4th Cir. 1993) ("[E]vidence of a buy-sell transaction is at least relevant (i.e. probative) on the issue of whether a conspiratorial relationship exists."). Accordingly, because this Court finds that there is a genuine issue of fact as to whether Parmer was a member of the conspiracy, this Court need not address Brozik's argument that a conspiracy cannot exist only between Brozik and Secure US.

Brozik's last argument as to why he believes SAFE's conspiracy claim cannot go forward is that because SAFE did not name Parmer in the fraud claim, Parmer cannot be liable for the conspiracy. Brozik asserts that if one is not liable for the underlying tort, he or she cannot be liable for the conspiracy to commit the tort. Thus, Brozik asserts that because he and Secure US cannot conspire with one another and Parmer cannot be considered part of the conspiracy, the conspiracy claim fails. In response, SAFE asserts that it did not include Parmer in its claim for fraud because Parmer did not make the misrepresentations to SAFE. SAFE argues, however, that Parmer was a party to the overall fraudulent scheme and as such may be considered part of the conspiracy.

It is true that to state a claim for civil conspiracy to defraud, the elements of fraud must be proven, as "the plaintiff must prove that the defendants have actually committed some wrongful act" for a conspiracy claim to be actionable. Roney v. Gencorp, 431 F. Supp. 2d 622, 637 (S.D. W. Va. 2006). Liability

for the underlying tort, however, may be imposed on defendants through a conspiracy claim "who did not actually commit a tort themselves but who shared a common plan for its commission with the actual perpetrator(s)." Dunn v. Rockwell, 686 S.E.2d 255, 269 (W. Va. 2009) (citations omitted). Accordingly, while a defendant may not have committed the fraud himself or herself, the person may still be liable for conspiracy to commit fraud if he or she shared a common plan for its commission with the actual perpetrators of the fraud. As such, SAFE need not name Parmer in the underlying fraud claim to assert that she is liable for a conspiracy. Instead, a jury may find Parmer liable on the conspiracy, without finding her liable of the underlying fraud, if she shared a common plan with the other defendants for the commission of the fraud. Thus, Brozik's argument that Parmer cannot be liable for conspiracy absent SAFE naming her in the fraud claim is without merit and Brozik's motion for summary judgment must be denied.

B.    SAFE's Motion for Summary Judgment

SAFE seeks an order from this Court granting summary judgment in its favor on all claims. Accordingly, this Court will address each of SAFE's four claims separately.

1.    Count I: Declaratory Judgment

SAFE initially seeks summary judgment as to its claim for declaratory judgment. SAFE's declaratory judgment claim asks this Court to make a finding that SAFE's judgment lien was not

extinguished by the secured party sale.  Under West Virginia law, "[e]very aspect of a disposition of collateral, including the method, manner, time, place and other terms, must be commercially reasonable."  W. Va. Code § 46-9-610(b).  If the disposition is "commercially reasonable, a secured party may dispose of collateral by public or private proceedings . . . and at any time and place and on any terms."  Id.  In addition, regardless of the secured party's actions, if the transferee at the secured party's disposition does not act in good faith, it "takes the collateral subject to . . . any other security interest or other lien."  W. Va. Code § 46-9-617.  Because Parmer is both the secured party who conducted the sale and the eventual transferee of the collateral of Secure US, she must have conducted the sale in a commercially reasonable way as the secured party and acted in good faith as the transferee.

In SAFE's motion for summary judgment, SAFE asserts that Parmer did not act in good faith, as she was attempting to assist Secure US in avoiding SAFE's judgment lien.  Parmer responded in opposition to this argument, asserting that she did not have knowledge of the sale, and only thought she was providing a loan to Brozik.  Secure US and Brozik respond in opposition, by asserting that there is a genuine issue of material fact concerning commercial reasonableness.  Thus, they assert that the issue must be presented to the jury for a determination.  SAFE, however, is

19

not arguing in its summary judgment motion that the sale was commercially unreasonable. Instead, SAFE's motion focuses on Parmer's good faith. In order for a secured party, acting as a transferee, to take the property free of other liens on the property, the transferee must do so in good faith. W. Va. Code § 46-9-617. Nonetheless, this Court finds that there is a genuine issue of material fact as to whether or not Parmer was acting in good faith.

West Virginia Code § 46-1-201(20) defines "good faith" as "honesty in fact and the observance of reasonable commercial standards of fair dealing." Parmer testified at her deposition that she believed she was only making a loan to Brozik and that she did not know about the sale. <u>See</u> ECF No. 105 Ex. B. While conflicting testimony exists from Brozik, it is up to the jury to determine whether or not Parmer acted in good faith, and whether her lack of knowledge constitutes good faith. This Court notes that as support for its argument that Parmer is not a good faith purchaser, SAFE cites various cases wherein courts found bad faith on the part of the purchaser or transferee. This Court finds that such cases are distinguishable, as it does not appear that the purchasers or transferees in those actions were claiming to be unaware that they owned the assets subject to the sale or that they were unaware of the sale itself, which is the claim by Parmer in this case. <u>See</u> ECF No. 102 *13-18 (SAFE's memorandum in support of

its motion for summary judgment citing various cases in support of its good faith argument). Accordingly, this Court cannot grant summary judgment in SAFE's favor as to the declaratory judgment claim.

### 2. Count 2: Successor Liability

SAFE next argues that Parmer is liable to SAFE for the judgment lien as a successor to Secure US. Successor liability is determined based on state law. See Fuisz v. Lynch, 147 F. App'x 319, 321 (4th Cir. 2005) (applying Virginia law on successor liability). "In West Virginia, successor liability is analyzed under the law of the transferee corporation's state of incorporation". Carter Enterprises, Inc. v. Ashland Specialty Co., Inc., 257 B.R. 797, 802 (S.D. W. Va.) (citations omitted). Based on the representations made to this Court, this Court has no reason to believe that the resulting entity is not operating as a West Virginia entity. Under West Virginia law, "[a] successor corporation can be liable for the debts and obligations of a predecessor corporation if there was an express or implied assumption of liability, if the transaction was fraudulent, or if some element of the transaction was not made in good faith." Syl. pt. 3, Davis v. Celotex Corp., 420 S.E.2d 557 (W. Va. 1992). Further, a successor corporation may be liable also if "the successor corporation is a mere continuation or reincarnation of its predecessor." Id. These are exceptions to the common law rule

that held "the purchaser of all the assets of a corporation was not liable for the debts or liabilities of the corporation purchased." Id. at syl. pt. 2.

SAFE first argues that Parmer is liable as a successor because Parmer, through the use of MB Security, operates the assets as a mere continuation of Secure US. In support of this argument, SAFE asserts that the business is still run by the same employees using the same offices, equipment, telephone numbers, email addresses, and Internet website. Further, SAFE argues that the business is still known as Secure US. Based on the case law of West Virginia, however, "the principle consideration in determining whether one corporation is mere continuation or reincarnation of the other is whether only one corporation exists after completion of a transfer of assets and whether there is a common identity of directors and stockholders." Jordan v. Ravenswood Aluminum Corp., 455 S.E.2d 561, 564 (W. Va. 1995). SAFE asserts that the United States Court of Appeals for the Fourth Circuit does not follow this strict theory of continuity of ownership that requires a common identity of directors and stockholder. Such an assertion, however, does not aid its argument, as this Court must apply West Virginia law. The Fourth Circuit decisions cited by SAFE in support of their argument for a less strict theory of successor liability do not apply West Virginia law, but instead apply the law of other states within the circuit or the law pursuant to a federal statute. See Kaiser

Foundation Health Plan of Mid-Atlantic States v. Clary & Moore, P.C., 123 F.3d 201 (4th Cir. 1997) (applying Virginia law on successor liability); United States v. Carolina Transformer Co., 978 F.2d 832 (4th Cir. 1992) (applying the law of successor liability under the Comprehensive Environmental Response, Compensation, and Liability Act, 42 U.S.C. § 9601, et seq.). In applying the case law from the West Virginia, this Court finds that Parmer cannot be held liable based on West Virginia's continuation theory of successor liability. Parmer was not a director, nor was she a shareholder of the previous corporation.

SAFE next argues that because the transfer was fraudulent, Parmer is liable as a successor. As this Court has indicated above, however, there is conflicting evidence as to whether Parmer was a participant in the alleged fraudulent scheme. The depositions of Brozik and Parmer taken together create a genuine issue of material fact as to whether Parmer did in fact engage in the conspiracy. See ECF Nos. 105 Ex. B and 102 Ex. A. While Parmer claims to be unaware she was purchasing the notes from the Trust, Brozik states the exact opposite. Brozik stated that he explained to Parmer that she was going to purchase the notes and actually foreclose on those notes as well. See ECF No. 102 Ex. A *18. Parmer states that she thought she was only making a loan to Brozik. See ECF No. 105 Ex. B *5. Accordingly, whether or not Parmer participated in the alleged fraudulent scheme is a question

for the jury.  Thus, this Court cannot impose successor liability based on the alleged fraud perpetrated by Parmer.

3.  Count 3: Fraudulent Scheme

SAFE asserts that this Court should grant summary judgment as to SAFE's claim for fraud against Brozik and Secure US.  As stated above, under West Virginia law, the essential elements of fraud are as follows:

> (1) that the act claimed to be fraudulent was the act of the defendant or induced by him; (2) that it was material and false; that plaintiff relied upon it and was justified under the circumstances in relying upon it; and (3) that he was damaged because he relied upon it.

Poling v. Pre-Paid Legal Servs., Inc., 575 S.E.2d 199, 202 (W. Va. 2002) (quoting Horton v. Tyree, 139 S.E. 737, 738 (W. Va. 1927)). SAFE asserts that it relied on the Secure US's alleged fraudulent representations concerning the settlement negotiations and Brozik was involved in making such representations.  SAFE asserts that such representations deprived them of their right to the court-ordered sale and caused them to file this instant action seeking a declaratory judgment that its judgment lien was not extinguished by the sale to Parmer.

This Court, however, finds that the record establishes a genuine issue of material fact concerning whether or not Brozik and Secure US's actions were fraudulent.  Brozik asserts that the postponement of the sale was done without fraudulent intent. Instead, he believed that the attorneys would settle on the terms

that he thought SAFE had previously agreed to. <u>See</u> ECF No. 102 Ex. A *15. Secure US also asserts that the parties had reached a settlement and the postponement was meant to work out the details of the settlement. SAFE asserts that the representations of Brozik and Secure US in seeking the postponement of the sale were not to engage in further settlement discussions, but to make plans for Parmer to purchase Secure US's assets. Such conflicting arguments must be presented to the jury for their determination and cannot be decided on summary judgment.

    4. <u>Count IV: Conspiracy</u>

    Lastly, SAFE argues that this Court should grant summary judgment in its favor as to SAFE's claim for conspiracy. In order to prove an actionable claim for conspiracy, however, "the plaintiff must prove that the defendants have actually committed some wrongful act." <u>Roney</u>, 431 F. Supp. 2d at 637. The wrongful act at issue is the alleged fraud. As this Court has found that the fraud claim must be presented to a jury for determination, this Court cannot grant summary judgment as to the conspiracy to commit fraud claim.

## V. <u>Conclusion</u>

    For the reasons stated above, Security Alarm Financing Enterprises, Inc.'s motion for summary judgment (ECF No. 101) is hereby DENIED, Mitch Brozik's motion for summary judgment as to fraud and conspiracy (ECF No. 104) is hereby DENIED, and Security

Alarm Financing Enterprises, Inc.'s motion to strike memorandum of Secure US, Inc. purporting to join in Mitch Brozik's motion for summary judgment (ECF No. 118) is hereby DENIED.

IT IS SO ORDERED.

The Clerk is DIRECTED to transmit a copy of this memorandum opinion and order to counsel of record herein.

DATED:    April 14, 2014

/s/ Frederick P. Stamp, Jr.
FREDERICK P. STAMP, JR.
UNITED STATES DISTRICT JUDGE